## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JEROME JUNIOR WASHINGTON,

        Plaintiff,

  v.

DAVID DURST, LPM, *et al.*,

        Defendants.

No. 4:22-CV-01243

(Chief Judge Brann)

## MEMORANDUM OPINION

### DECEMBER 29, 2023

Plaintiff Jerome Junior Washington is a serial litigator who is well known in the Middle District of Pennsylvania. He filed the instant *pro se* Section 1983[1] action in 2022, claiming constitutional violations by several prison officials at the State Correctional Institution, Rockview (SCI Rockview), located in Bellefonte, Pennsylvania. Presently pending is Defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). The Court will grant Defendants' motion.

## I.    BACKGROUND

As noted above, Plaintiff Jerome Junior Washington is serial *pro se* litigant who has filed dozens of frivolous lawsuits in the federal district courts in Pennsylvania. He is currently incarcerated at SCI Forest.[2]

---

[1]    42 U.S.C. § 1983. Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials. The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).

[2]    *See* Doc. 23.

In this case, Washington alleges that an SCI Rockview mental health provider—Licensed Psychologist Manager (LPM) David Durst—failed to provide adequate mental health care to him.[3]  Washington avers that he suffers from schizoaffective disorder with hallucinations, post-traumatic stress disorder, Bipolar-1 disorder, suicidal ideations, attention deficit disorder, and anti-social personality disorder.[4]  He asserts that, due to his serious mental illness,[5] he was housed in the Behavior Management Unit (BMU) at SCI Rockview from July 2020 through the time of filing the instant lawsuit.[6]

Washington's complaint, like his other lawsuits, is rambling and disjointed and extremely difficult to parse.  Washington appears to assert that Durst was deliberately indifferent to his serious mental health needs in several ways.  As best the Court can discern, Washington contends that Durst failed to comply with Pennsylvania Department of Corrections (DOC) policy,[7] adjusted Washington from a "Phase 2" to a "Phase 4" in his BMU programming,[8] and refused to follow Washington's requests regarding psychological care.[9]  Washington sues Durst and

---

[3]  *See generally* Doc. 1.
[4]  *Id.* ¶ 8.
[5]  *Id.* ¶ 11.
[6]  *Id.* ¶¶ 7, 9, 11.
[7]  *Id.* ¶¶ 12-15, 18, 20, 25, 26.
[8]  *Id.* ¶ 18.
[9]  *Id.* ¶¶ 21, 25, 26.

SCI Rockview superintendent Salamon,[10] although he does not provide any allegations of Salamon's involvement in the alleged constitutional violations.

Defendants timely filed a motion to dismiss[11] pursuant to Federal Rule of Civil Procedure 12(b)(6) and a supporting brief.[12] Washington eventually filed a brief in opposition that complied with the Local Rules of Court after numerous extensions.[13] No reply has been filed, and the time in which to do so has passed, so Defendants' motion to dismiss is ripe for disposition.

## II.   STANDARD OF REVIEW

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), courts should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."[14] The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff.[15] In addition to the facts alleged on the face of the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as

---

[10]   *See id.* ¶¶ 5, 6.
[11]   Doc. 20.
[12]   Doc. 21.
[13]   *See, e.g.*, Docs. 22, 24, 33, 39, 40, 41.
[14]   *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see Nami v. Fauver*, 82 F.3d 63, 66 (3d Cir. 1996).
[15]   *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008).

undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents.[16]

When the sufficiency of a complaint is challenged, the court must conduct a three-step inquiry.[17]   At step one, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim."[18]   Second, the court should distinguish well-pleaded factual allegations—which must be taken as true—from mere legal conclusions, which "are not entitled to the assumption of truth" and may be disregarded.[19]   Finally, the court must review the presumed-truthful allegations "and then determine whether they plausibly give rise to an entitlement to relief."[20] Deciding plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[21]

Because Washington proceeds *pro se*, his pleadings are to be liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]"[22]   This is particularly true when the *pro se* litigant, like Washington, is incarcerated.[23]

---

[16]   *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

[17]   *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal citations and quotation marks omitted) (footnote omitted).

[18]   *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) (alterations in original)).

[19]   *Id.* (quoting *Iqbal*, 556 U.S. at 679).

[20]   *Id.* (quoting *Iqbal*, 556 U.S. at 679).

[21]   *Iqbal*, 556 U.S. at 681.

[22]   *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted).

[23]   *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (citation omitted).

## III.   DISCUSSION

Defendants contend that Washington's complaint fails to state an Eighth Amendment claim against either Defendant.   The Court agrees.

### A.   Personal Involvement

It is well established that, in Section 1983 actions, liability cannot be "predicated solely on the operation of *respondeat superior*."[24]   Rather, a Section 1983 plaintiff must aver facts that demonstrate "the defendants' personal involvement in the alleged misconduct."[25]   Personal involvement can include direct wrongful conduct by a defendant, but it can also be demonstrated through allegations of "personal direction" or of "actual knowledge and acquiescence"; however, such averments must be made with particularity.[26]   Furthermore, it is equally settled that involvement in the post-incident grievance process alone does not give rise to Section 1983 liability.[27]

Washington does not include any allegations against Salamon.   In fact, Salamon's name appears only in the caption and defendant-identification section of

---

[24]   *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted); *see also Ashcroft v. Iqbal*, 556. U.S. 662, 676 (2009) (affirming same principle in *Bivens* context).

[25]   *Dooley*, 957 F.3d at 374 (citing *Rode*, 845 F.2d at 1207).

[26]   *Id.* (quoting *Rode*, 845 F.2d at 1207).

[27]   *See id.* (affirming dismissal of claims against prison officials for lack of personal involvement when officials' "only involvement" was "their review and denial of [plaintiff]'s grievance"); *Lewis v. Wetzel*, 153 F. Supp. 3d 678, 696-97 (M.D. Pa. 2015) (collecting cases); *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (nonprecedential); *Alexander v. Gennarini*, 144 F. App'x 924, 925 (3d Cir. 2005) (nonprecedential) (explaining that prisoner's claims against certain defendants were "properly dismissed" because the allegations against them "merely assert their involvement in the post-incident grievance process").

Washington's complaint.[28]  Thus, any claim against Salamon must be dismissed

pursuant to Rule 12(b)(6) for lack of personal involvement.

## B.    Deliberate Indifference to Serious Medical Needs

In the context of prison medical care, the Eighth Amendment "requires

prison officials to provide basic medical treatment to those whom it has

incarcerated."[29]  To state an Eighth Amendment deliberate indifference claim

regarding inadequate medical care, a plaintiff must plausibly plead "(i) a serious

medical need, and (ii) acts or omissions by prison officials that indicate deliberate

indifference to that need."[30]  A serious medical need is "one that has been

diagnosed by a physician as requiring treatment or one that is so obvious that a lay

person would easily recognize the necessity for a doctor's attention."[31]

Deliberate indifference by prison officials may be evidenced by intentional

refusal to provide care known to be medically necessary, delayed provision of

medical treatment for non-medical reasons, denial of prescribed medical treatment,

or denial of reasonable requests for treatment resulting in suffering or risk of

---

[28]  Washington includes various allegations against Salamon in his brief in opposition to Defendants' Rule 12(b)(6) motion, (*see* Doc. 41 at 10-13), but it is axiomatic that a plaintiff cannot amend his pleadings through a brief in opposition to a motion to dismiss.  *Frederico v. Home Depot*, 507 F.3d 188, 201-02 (3d Cir. 2007) (citing *Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988)).

[29]  *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

[30]  *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003).

[31]  *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).

injury.[32]  Deliberate indifference to serious medical needs is an exacting standard, requiring a showing of "unnecessary and wanton infliction of pain."[33]  Claims sounding in mere medical negligence will not suffice.[34]

As noted above, Washington contends that Durst failed to comply with DOC policy, adjusted Washington from a "Phase 2" to a "Phase 4" in his BMU programming, and refused to follow Washington's directives regarding psychological care.  None of these allegations—alone or together—meet the high bar of plausibly pleading constitutionally deficient medical care.

Although Washington's pleadings are difficult to follow (and often have no discernable delineation between claims), his primary complaint appears to be that Durst failed to comply with various provisions of Section 12 of DOC Policy Statement 13.8.1 "Access to Mental Health Care," which covers mental health care in the BMU.[35]  Washington asserts that he was not receiving proper care because a mental health provider was not making "rounds 5 days a week" Monday through Friday and stopping at his door each day.[36]  He alleges that Durst told the psychology staff that daily rounds were unnecessary.[37]

---

[32]  *See Durmer v. O'Carroll*, 991 F.2d 64, 68 & n.11 (3d Cir. 1993) (quoting *Lanzaro*, 834 F.2d at 346).

[33]  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted).

[34]  *Rouse*, 182 F.3d at 197.

[35]  *See* Doc. 41 at 7 (asserting that Defendants were "not running SCI-Rockview BMU[] accordant [sic] 13.8.1 Section 12-BMU procedures").

[36]  Doc. 1 ¶¶ 11, 18, 20.

[37]  *Id.* ¶ 23.

There are at least two problems with this claim.  First, as Washington has been repeatedly admonished,[38] violation of a prison policy—a recurrent theme in his Section 1983 lawsuits—does not, in itself, state a constitutional infringement. It is axiomatic that "a prison policy manual does not have the force of law and does not rise to the level of a regulation" and that "a violation of internal policy does not automatically rise to the level of a Constitutional violation."[39]  Merely contending that Durst failed to comply with certain provisions of Policy Statement 13.8.1 does not establish a claim of medical deliberate indifference.

Second, Washington has failed to show how Durst violated Section 12 of Policy Statement 13.8.1.  Washington has not identified what portion of Section 12 (or any other section of Policy Statement 13.8.1) requires psychology staff to make daily rounds five days a week in the BMU.  So even if a policy violation were actionable, and it is not, Washington has not plausibly alleged one.

Washington also appears to take issue with various treatment decisions made by Durst.  As best the Court can tell, those decisions include adjusting Washington

---

[38] *See, e.g.*, *Washington v. Salamon*, No. 4:21-cv-01746, 2022 WL 4096877, at *5 & n.48 (M.D. Pa. Sept. 7, 2022).

[39] *Atwell v. Lavan*, 557 F. Supp. 2d 532, 556 n.24 (M.D. Pa. 2007) (citations omitted); *see Bullard v. Scism*, 449 F. App'x 232, 235 (3d Cir. 2011) (nonprecedential) (explaining that, even if prison officials violated a regulation, such a violation "is not actionable"); *Jordan v. Rowley*, No. 1:16-CV-1261, 2017 WL 2813294, at *2 (M.D. Pa. June 29, 2017); *Williamson v. Garman*, No. 3:15-CV-1797, 2017 WL 2702539, at *6 (M.D. Pa. June 22, 2017); *see also United States v. Jiles*, 658 F.2d 194, 200 (3d Cir. 1981) (noting that even violations of state law will not automatically have a "constitutional dimension").

from a Phase 2 to a Phase 4 in his BMU programming,[40] not providing certain

psychology services at Washington's cell door so that he did not have to attend

group therapy sessions,[41] not requiring psychology support staff to perform daily

rounds,[42] failing to provide appropriate "confidentiality" during psychology staff

individual out-of-cell therapy sessions,[43] failing to provide Washington with "in-

cell therapy modules" that teach him "healthier ways to cope with anxiety,

paranoia and depression" rather than at a group-based meeting,[44] and not

incorporating Washington's specific treatment requests into his individual recovery

plan.[45]

Simply put, these allegations do not implicate deliberate indifference to

serious medical needs.  It is well settled that mere disagreement with a medical

provider's professional judgment or treatment plan does not state an Eighth

Amendment violation.[46]  Washington does not allege, for example, that he is being

---

[40]  *See* Doc. 1 ¶ 18.
[41]  *Id.* ¶¶ 21, 26.
[42]  *Id.* ¶¶ 23-24.
[43]  *Id.* ¶ 24.
[44]  *Id.* ¶ 26.
[45]  *Id.* ¶ 27.
[46]  *See Lanzaro*, 834 F.2d at 346 (explaining that "mere disagreement as to the proper medical treatment" does not "support a claim of an eighth amendment violation"); *see also Pearson v. Prison Health Serv.*, 850 F.3d 526, 535 (3d Cir. 2017) ("Because 'mere disagreement as to the proper medical treatment' does not 'support a claim of an eighth amendment violation,' when medical care is provided, we presume that the treatment of a prisoner is proper absent evidence that it violates professional standards of care." (internal citation omitted)); *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990) ("[I]t is well established that as long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.").

refused mental health treatment, that prescribed treatment has been denied, or that treatment is being delayed for nonmedical reasons. Rather, Washington appears to be asserting that Durst is not acquiescing to Washington's preferences for mental health treatment in the BMU. But Washington is not a medical professional, and alleging that a licensed psychologist manager is not obliging his personal preferences or requests does not state a constitutional violation.

Moreover, Washington plainly acknowledges that he is being provided mental health treatment in the BMU. For instance, he avers that he spoke to Dr. Weber (a psychiatrist) on February 22, 2022, regarding mental health treatment and that Dr. Weber had "psychologist Ms. Wasson stop at [his] door" shortly thereafter.[47] He also admits that psychology staff make rounds during "out of cell structure group activities,"[48] and that psychological services regularly perform rounds (although not daily rounds as Washington would prefer).[49] Washington further concedes that Durst makes regular "PRT rounds" in his housing unit and Washington continually stops him and talks to him.[50] He further maintains that psychology staff regularly conduct individual out-of-cell therapy sessions, although he complains that they lack the appropriate level of confidentiality.[51]

---

[47] Doc. 1 ¶ 18.
[48] *Id.*
[49] *Id.* ¶¶ 23, 24.
[50] *Id.* ¶ 22.
[51] *Id.* ¶ 24.

Additionally, Washington states that Durst provided him with an individual recovery plan, although it did not include Washington's suggestions.[52]

In sum, Washington's allegations against Durst do not plausibly state an Eighth Amendment infringement. Washington appears to disagree with Durst's management of the BMU and his treatment decisions, but such disagreement does not amount to a constitutional violation. There simply is nothing in Washington's complaint that would plausibly indicate that Durst has exhibited deliberate indifference to Washington's serious mental health needs. Accordingly, this claim must be dismissed.

### C.    Conditions-of-Confinement Claim

In various sections of his complaint, Washington appears to be attempting to assert a conditions-of-confinement claim regarding his placement in a "hard cell" with allegedly unconstitutional conditions during a single day in February 2022.[53] That claim, however, has already been adjudicated and dismissed in separate litigation.[54] Consequently, Washington's conditions-of-confinement claim regarding the events of February 16 and 17, 2022—if he is attempting to assert this claim in the case at bar—will be dismissed as frivolous and malicious pursuant to 28 U.S.C. § 1915(e)(2)(B)(i).

---

[52] *Id.* ¶ 27.

[53] *See* Doc. 1 ¶¶ 17, 18.

[54] *See Washington v. Anna*, No. 4:22-CV-01744, 2022 WL 17823680, at *2-3 (M.D. Pa. Dec. 20, 2022).

### D.    Official Capacity Claim

Washington sues Durst in his individual and official capacities.[55]  However, the Eleventh Amendment to the United States Constitution prevents federal courts from entertaining lawsuits—by United States citizens or citizens of foreign states—brought against a state.[56]  This immunity from private suit extends to state agencies as well as state officials acting in their official capacity, because such lawsuits are essentially civil actions "against the State itself."[57]  States may waive this immunity if they choose, but Pennsylvania has explicitly not waived its immunity with respect to claims brought under Section 1983.[58]  There are two exceptions to the Eleventh Amendment's bar to private suits against nonconsenting states: (1) "Congress may abrogate a state's immunity" and (2) "parties may sue state officers for prospective injunctive and declaratory relief."[59]

From his complaint, it appears that Washington seeks prospective injunctive relief "to stop the constitutional violations described" and "to ensure that DOC prisoners" like Washington "receive constitutionally adequate mental health

---

[55]  *See* Doc. 1 at p. 1 (caption).

[56]  U.S. CONST. amend. XI; *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267-68 (1997); *Hans v. Louisiana*, 134 U.S. 1, 10 (1890).

[57]  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

[58]  *See* 42 PA. CONS. STAT. § 8521(b); *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 310 (3d Cir. 2020); *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 254 & n.5 (3d Cir. 2010) (citing 42 PA. CONS. STAT. § 8521(b)).

[59]  *Wheeling & Lake Erie Ry. Co. v. Pub. Util. Comm'n of Pa.*, 141 F.3d 88, 91 (3d Cir. 1998) (citing, *inter alia*, *Ex parte Young*, 209 U.S. 123 (1908)).

care."[60]  However, as fully explained above, Washington has failed to set forth any plausible constitutional violations against Durst.  Thus, Washington's official capacity claim for prospective injunctive relief likewise fails to state a claim and must be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

The Court further observes that Washington has been transferred to SCI Forest and presumably is no longer under the psychiatric care of Durst.  Thus, any request for prospective injunctive relief is likely moot.[61]

### E.    Leave to Amend

Generally, "*in forma pauperis* plaintiffs who file complaints subject to dismissal under Rule 12(b)(6) should receive leave to amend unless amendment would be inequitable or futile."[62]  The Court will permit Washington to amend his complaint with respect to his Eighth Amendment medical indifference claim. Washington, if he is able, must cure the deficiencies identified in this Memorandum by pleading facts that demonstrate deliberate indifference to serious medical needs.

If Washington chooses to file an amended complaint in conformity with this Memorandum, it should be a stand-alone document, complete in itself and without

---

[60]   Doc. 1 ¶ 29.

[61]   *See Sutton v. Rasheed*, 323 F.3d 236, 248 (3d Cir. 2003) ("An inmate's transfer from the facility complained of generally moots the equitable and declaratory claims."); *see also Abdul-Akbar v. Watson*, 4 F.3d 195, 197 (3d Cir. 1993).

[62]   *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

reference to any previous pleadings.  The amended complaint should set forth

Washington's medical indifference claim in short, concise, and plain statements,

and in *sequentially numbered paragraphs*.  Washington is specifically admonished

that he must number his paragraphs rather than using multiple bullet points that

result in a "paragraph" stretching for multiple pages.  Such pleading is confusing

and difficult to follow and it violates Federal Rule of Civil Procedure 10(b).

Washington must leave one-inch margins on all four sides of his pleading.[63]

He *may not* include claims that have been dismissed with prejudice.  Washington

need not, *and should not*, include word-for-word recitation of his grievances or of

prison regulations or policies, nor should he include legal argument.  If

Washington desires to reference a provision of a DOC policy, he should do so by

citing to the specific subdivision of the at-issue policy, for example: "Section

12(C)(1)(b) of Policy Statement 13.8.1."  He must also specify the offending

actions taken by a particular defendant, sign the amended complaint, and indicate

the nature of the relief sought.

Failure to comply with these instructions will result in the Court striking the

amended pleading.  If Washington does not timely file an amended complaint,

dismissal of the Eighth Amendment medical indifference claim will automatically

convert to dismissal with prejudice and the Court will close this case.

---

[63]   *See* LOCAL RULE OF COURT 5.1

## IV.   CONCLUSION

Based on the foregoing, the Court will grant Defendant's motion (Doc. 20) to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  Leave to amend will be granted.  An appropriate Order follows.

BY THE COURT:

_s/ Matthew W. Brann_
Matthew W. Brann
Chief United States District Judge